CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 23 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DAVON BELL,

    Plaintiff,

v.

CITY OF ROANOKE SHERIFF'S OFFICE, et al.,

    Defendants.

Civil Action No. 7:09-CV-00214

**MEMORANDUM OPINION**

By: Hon. Glen E. Conrad
United States District Judge

This matter comes before the court on the defendants' motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court conducted a hearing on these motions on December 11, 2009. For the following reasons, the defendants' motions will be granted in part and denied in part.

**I.**     **Factual and Procedural Background**

On June 1, 2009, DaVon Bell filed this civil action against the City of Roanoke Sheriff's Office (the "Sheriff's Office"); the City of Roanoke Sheriff, Ocatvia Johnson; a Sheriff's deputy, Brandon Young; and other deputies John Does. All of the individual defendants are sued in their official and individual capacities.

The following facts are taken from the plaintiff's complaint. On September 14, 2008, Bell was arrested and brought to the Roanoke City Jail Docket Area for booking. An argument ensued between Bell and a deputy of the Sheriff's Office regarding the number of phone calls that Bell was permitted. This deputy subdued Bell such that Bell was lying face down on the floor. Deputies Young and Does then began to hit and beat Bell in the lower back and kidney area. Bell's left arm was injured during the assault.

Bell alleges that, after this assault, he was taken to his cell, where defendants Young and Does ordered Bell to put his arms up with his hands behind his head. When Bell was unable to comply due to his injuries, the defendants pushed his arms into position, fracturing his left elbow in the process. Despite the fact that he suffered significant pain in his back and elbow, the defendants refused to provide medical treatment for him. Bell was released from the Roanoke City Jail on September 16, 2008. The next day, on September 17, 2008, Bell was diagnosed with a fractured elbow which required surgery. Bell underwent surgery on October 1, 2008.

Bell alleges that the excessive force to which he was subjected was an "institutionalized practice of the Roanoke City Sheriff's Office" and that the "Sheriff was aware of the use of excessive force by its deputies, but took no effective action to prevent personnel from engaging in such misconduct." (Compl. ¶ 22.) He also alleges that the Sheriff's Office and Sheriff Johnson "had prior notice of the deputy Defendants' vicious and malicious tendencies, but took no steps to train them, correct their abuse of authority, or to discourage their unlawful use of authority." (Compl. ¶ 23.) Finally, Bell alleges that the defendants altered a videotape of the September 14, 2008, incident such that the actions of defendant Young have been removed from the tape.

Based on these allegations, Bell asserts a claim of excessive force and a claim of conspiracy to violate civil rights against all defendants under 42 U.S.C. § 1983. He also asserts a claim of assault and battery against all defendants under state law. Bell seeks compensatory and punitive damages from the defendants.

On September 24, 2009, Sheriff Johnson and the Sheriff's Office filed a motion to dismiss all three counts of Bell's complaint. On September 28, 2009, Deputy Young filed a motion to dismiss the conspiracy count of Bell's complaint. The motions having been fully briefed and the

parties having appeared before the court for a hearing on these motions, the matter is now ripe for disposition.

## II. Discussion

The defendants have moved to dismiss the complaint for failure to state a claim on which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at ___, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

### A. Eleventh Amendment Immunity

The defendants argue that they are entitled to Eleventh Amendment immunity and that all claims against them in their official capacities must be dismissed. The court agrees with the defendants that the plaintiff's claims against them in their official capacities, as well as the plaintiff's claims against the Sheriff's Office, are barred by the Eleventh Amendment. It is well settled that,

3

in Virginia, suits against a Sheriff or her deputies in their official capacities, as well as suits against the Sheriff's Office, are considered suits against the state. See Harris v. Hayter, 970 F. Supp. 500, 502 (W.D. Va. 1997) ("[i]n Virginia, a suit against a sheriff in his official capacity is a suit against a state official"); Blankenship v. Warren County, 931 F. Supp. 447, 449 (W.D. Va. 1996) (stating that "the Sheriff and the Sheriff's Department are arms of the state and cannot be held liable for monetary damages under § 1983"). The Eleventh Amendment bars actions for monetary damages against a state by its own citizens, unless Congress has validly abrogated that immunity or the state itself has consented to suit. See Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). Because there is no indication of any abrogation or consent to suit in this case, the plaintiff's claims against Sheriff Johnson and her deputies in their official capacity, as well as the plaintiff's claims against the Sheriff's Office, are barred by the Eleventh Amendment. The court will thus grant the defendants' motions to dismiss with respect to these claims.

**B.    Claims Under 42 U.S.C. § 1983**

The plaintiff asserts two claims against Sheriff Johnson and her deputies in their individual capacities under 42 U.S.C. § 1983. The plaintiff alleges that Sheriff Johnson and her deputies violated Bell's rights by using excessive force against him and by conspiring to violate his civil rights. Sheriff Johnson has moved to dismiss both claims, and Deputy Young has moved to dismiss the conspiracy claim.

**1.    Excessive Force**

Bell asserts a claim of excessive force against Sheriff Johnson in her individual capacity, though he alleges no facts indicating that she had any direct involvement in the events of September 14, 2008. It is well-settled that supervisory liability may not be predicated upon a theory of

respondeat superior. See Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983). Section 1983 requires a showing of personal fault on the part of the defendant. See Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). To the extent a supervisor may be liable under § 1983, such liability is based on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries [the subordinates] inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Under the test established by the United States Court of Appeals for the Fourth Circuit, supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offense practice; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

In the present case, Bell has alleged sufficient facts to make out a plausible entitlement to relief. Bell alleges that Sheriff Johnson "learn[ed] of instances of deputy misconduct," which included "repeated failures to follow policy and procedures, unnecessary use of excessive force, roughness during arrest, and intimidation of suspects during arrests and booking procedures." (Compl. ¶ 37.) Bell alleges that Sheriff Johnson failed to take corrective action or to properly train the deputies after learning of the instances of misconduct, an allegation which suggests that she was deliberately indifferent to the fact that her subordinates were engaged in conduct that posed a

pervasive risk of constitutional injury. Accordingly, the motion to dismiss the plaintiff's excessive force claim against Sheriff Johnson in her individual capacity must be denied.

2. **Conspiracy**

A conspiracy under § 1983 exists when two or more conspirators agree to deprive a plaintiff of a constitutional right under color of law. The intracorporate immunity doctrine recognizes that, when defendants are all a corporation and its officers or employees, the defendants are legally incapable of conspiracy. Officers or employees of the same organization do not provide the plurality of actors necessary for a civil conspiracy. See Buschi v. Kirven, 775 F.2d 1240, 1251-2 (4th Cir. 1985). Moreover, immunity is not destroyed by suing the corporate actors in their individual capacities. Id.

Immunity can be destroyed, however, when for example the corporate employees are dominated by personal motives or when their actions exceed the bounds of their authority. Id. at 1252. In the instant case, Bell has made numerous allegations regarding the defendants' participation in the alleged use of excessive force and the alleged conspiracy to violate his rights. Although some of these allegations might tend to suggest that the defendants acted pursuant to an official policy, others suggest that the defendants' actions were anything but routine and that they either were dominated by personal motives or acted outside the bounds of their authority. For example, Bell alleges that the deputies acted "maliciously and sadistically" and that Sheriff Johnson did nothing to prevent them "from engaging in such misconduct." (Compl. ¶¶ 15, 22.) Because the applicability of the exceptions to intracorporate immunity entail a factual inquiry, the court will deny the defendants' motion to dismiss on the ground of intracorporate immunity.

The defendants also challenge the sufficiency of the pleadings in the conspiracy count. In order to establish a conspiracy under 42 U.S.C. § 1983, a plaintiff must present evidence that the defendants acted jointly and in concert and that some overt act was done in furtherance of the conspiracy which resulted in plaintiff's deprivation of a constitutional right. See Hinkle v. Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996); Hafner v. Brown, 983 F.2d 570, 577 n.6 (4th Cir. 1992). Although the plaintiff need not "produce direct evidence of a meeting of the minds," ultimately he will have to "come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective." Hinkle, 81 F.3d at 421. Moreover, the Fourth Circuit has held that "[a]cquiescence can amount to a conspiracy agreement" when, for example, "one police officer watches an open breach of the law and does nothing to seek its prevention." Hafner, 983 F.2d at 578.

In the present case, the plaintiff has alleged that all the defendants committed overt acts in furtherance of the conspiracy, and that all defendants knowingly participated in the conspiracy. He has further alleged that these overt acts took the form of actual participation, failure to intervene, acquiescence, or an attempt to cover up the actions taken. The plaintiff's allegation that the defendants altered a videotape depicting the events of September 14, 2008, in order to cover up the actions taken provides further factual grounding for the claim. Although there is no direct allegation of agreement, the allegation that the defendants "acted jointly and in concert" suffices to meet the plaintiff's pleading obligations. As such, defendant Young's motion to dismiss the conspiracy count for insufficient pleadings must be dismissed. Sheriff Johnson's motion to dismiss the conspiracy claim against her in her individual capacity will be taken under advisement pending further development of the record.

## C. Assault and Battery

Sheriff Johnson argues that the plaintiff's assault and battery claim under state law must be dismissed because certain recent cases suggest that, under Virginia law, respondeat superior is inapplicable to public officers, such as sheriffs, who act through subordinates in the performance of official duties. Sheriff Johnson argues that, to the extent certain older cases suggest that a sheriff is strictly liable for the acts of his or her deputies, such cases are outdated and not controlling.

In Miller v. Jones, 50 Va. (9 Gratt.) 584 (1853), the Supreme Court of Virginia addressed the liability of a sheriff for the acts of his deputy. After stating the ordinary rule that a principal is liable for the misfeasance and negligence of his agent, the Court stated that "on principles of public policy, the liability of a sheriff for his deputy is much more extensive." 50 Va. at 602. The Court stated that the "acts and defaults of the deputy, colore officii, are considered in law as the acts and defaults of the sheriff, who is liable therefor in the same form of action as if they had been actually committed by himself." Id. at 603; see also Sangster v. Commonwealth, 58 Va. (17 Gratt.) 124, 131 (1866); Agyeman v. Winston, 26 Va. Cir. 140, 142-43 (1991) (concluding that Miller "still state[s] the law").

The defendants suggest that these cases are no longer applicable. Although the defendants rely on two Virginia circuit court decisions holding that a sheriff is entitled to sovereign immunity for torts committed by his deputies, neither of these decisions specifically address the continued viability of the Supreme Court of Virginia's decision in Miller. See generally Watson v. Knight, 62 Va. Cir. 123 (2003); Small v. Jackson, 4 Va. Cir. 262 (1985). The defendants also rely on Harrison v. Prince William County Police Dep't, 640 F. Supp. 2d 688 (E.D. Va. 2009), in which the Court held that a police chief was entitled to sovereign immunity. In so holding, the court stated that the Virginia Circuit Court's decision in Agyeman "relied on eighteenth and nineteenth century authority"

8

which implicitly conflict with "more modern authority." Id. at 712. The Court's decision did not, however, address the validity of Miller.

This court is of the opinion that, even in light of more modern decisions out of the Virginia Circuit Court, Miller remains controlling authority. The Supreme Court of Virginia has not overruled or questioned the continued validity of its decision. The court therefore concludes that Miller's holding that "the acts ... of the deputy, colore officii, are considered in law as the acts ... of the sheriff" remains valid and controlling authority in Virginia. See, e.g., Rapids Constr. Co. v. Malone, No. 97-1239, 1998 U.S. App. LEXIS 4649, slip op. at *15 (4th Cir. 1998) (unpublished) (concluding that, although a case had not been cited by a Virginia court since 1935, it remained controlling authority); Simmons v. Hartford Ins. Co., 786 F. Supp. 574, 580 (E.D. La. 1992) (stating that the "Louisiana Supreme Court has spoken, albeit over one hundred years ago" and that the "Court need not speculate as to whether it might rule differently today"). As such, the court will deny Sheriff Johnson's motion to dismiss Bell's claim of assault and battery under state law.

## III. Conclusion

For the foregoing reasons, the court concludes that the defendants' motions to dismiss shall be granted in part and denied in part.

The Clerk is directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER:** This 23rd day of December, 2009.

_____
United States District Judge

9